Richard Mooney, Esq. (SBN 176486)
   richard.mooney@rimonlaw.com
Rimon, P.C.
One Embarcadero Center #400
San Francisco, California 94111
Telephone: (415) 539-0443
Facsimile: (800) 930-7271

Attorneys for Defendants/Counterclaimants
Danish Film Directors and Gabriel Axel

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFRONIA

| | |
|---|---|
| Josi Konski, an individual, | Case No. CV13-02383 ABC (JC) |
| Plaintiff, | Defendants/Counterclaimants' Brief re Choice of Law |
| v. | Pre-Trial Brief re Choice of Law |
| Danish Film Directors, a Danish association; Gabriel Axel, an individual, | Date: |
| Defendants. | Time:<br>Crtrm: |
| and related counterclaims | |

Pursuant to the Court's Minute Order dated April 4, Defendants and Counterclaimants Gabriel Axel ("Mr. Axel") and Danish Film Directors ("DFD"; along with Mr. Axel, "Counterclaimants"), respectfully submit this brief detailing the reasons that the central issues of this dispute are properly considered under Danish law.

## I. RELEVANT BACKGROUND

The underlying facts are not in serious dispute. In the mid-1980s, Mr. Axel wrote (in Danish, in Denmark) a screenplay based on the short story *Babettes Gæstebud* written by the well-known Danish author Karen von Blixen-Finecke. On July 22, 1986, Mr. Axel entered into an agreement (in Danish, in Denmark) with the Danish company A/S Nordisk Films Studier on behalf of Panorama Film International ("Panorama", which was owned and controlled by Just Betzer, a citizen and resident of Denmark), pursuant to which Mr. Axel assigned the rights to use the screenplay to create a film, in exchange for 5% of the revenue generated by any such film (the "Screenwriter Agreement"). On July 24, 1986, Mr. Axel and Panorama entered into a second agreement (in Danish, in Denmark) pursuant to which the parties agreed that Panorama would pay Mr. Axel to direct a film based on the screenplay, in exchange for which Panorama would have the right to distribute the film, subject to an obligation to pay Mr. Axel 10% of the revenue generated by the film after certain expenses were recouped (the "Director Agreement").[1] Neither contract contained a choice of law provision, although the Screenwriter Agreement called for arbitration of disputes pursuant to the Danish Arbitration Act. The film was shot mostly in Denmark (partially in France) and mostly in Danish (with some French and some Swedish).

---

[1] The relevant contracts and their English translations, which the parties have agreed will be admissible at trial, are attached hereto for the Court's convenience.

In or about 2007, Plaintiff/Counterdefendant Mr. Konski apparently paid $100,000 to the Estate of Just Betzer to obtain the "copyright interests or trademark interests that the Estate of Just Betzer may have" in intellectual property previously owned by Mr. Betzer or his companies. Mr. Konski contends that this purchase gave him the right to distribute the film *Babettes Gæstebud* throughout the world (except for Scandinavia, as Panorama had previously sold those rights). Since Mr. Konski does not and could not claim the right to distribute the Film except as a consequence of that contract with the Estate, the questions at issue in this litigation are:

1. Was the putative transfer of Panorama's rights and obligations under the 1986 Agreements to Mr. Konski effective, when done without the awareness or approval of Mr. Axel?

2. If so, has Mr. Konski fulfilled his (Panorama's) obligations under the 1986 Agreements?

Counterclaimants respectfully submit that each question must be decided under Danish law.

## II.   ARGUMENT

The 1986 Agreements were entered into in Denmark, related to a screenplay written in Denmark and a movie filed in Denmark, involved Danish parties, were written in Danish, and called for arbitration under Danish law. The Agreements had no connection whatsoever with the   Under the circumstances, there can be no question that any dispute relating to the 1986 Agreements between Mr. Axel and Panorama was and would be governed by Danish law.

In deciding what law governs the 1986 Agreements, a California federal court applies the State of California's choice of law rules. *See Arno v. Club Med Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994). California courts have applied two different approaches in determining what law to apply to contract disputes, with some courts

applying California Civil Code § 1646 and some courts applying California's "three-part governmental interest test." *Id.* Either approach leads to the conclusion that Danish law governs this dispute regarding the 1986 Agreements.

*First*, the statute provides in full: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it was made." "[I]ndicate is to be interpreted broadly, to encompass the parties' intention even if the place of performance is not explicitly written into the contract. *Frontier Oil Corp. v. RLI Insurance Co.*, 153 Cal.App.4th 1436, 1449 (2007). Here, there is no question that the parties understood that the screenplay had been written in Denmark and that the film would be mostly created in Denmark. And even if they did not, the Director Agreement was sent from Copenhagen, Denmark by Nordisk (for Panorama) to Mr. Axel in a Danish suburb of Copenhagen and the Screenwriter Agreement states that it was made in Copenhagen ("København").

*Second*, the governmental interest test has been described by the Ninth Circuit as follows:

> Under this amorphous and somewhat result-oriented approach, we must first consider whether the two states' laws actually differ; if so, we must examine each state's interest in applying its law to determine whether there is a "true conflict"; and if each state has a legitimate interest we must compare the impairment to each jurisdiction under the other's rule of law.

*Arno*, 22 F.3d at 1467. Here, there is a difference between Danish law, which both parties' experts agree places limitations on the right of parties to sublicense or further assign rights in contracts involving copyright rights, and California law, which Mr. Konski contends does not limit a copyright licensee or assignee's ability to

further sub-license or assign its rights at will.[2]  Further, there is no question that Denmark has a legitimate interest in applying its law to protect Danish authors and artists who wish to enter agreements to distribute their works without fear that the distributor will re-sell those rights to an unknown third party who may not have the requisite skill, experience, incentive, or financial strength to perform the distribution contract requirements adequately.  Thus, to the extent California has no legitimate interest in preferring its own law, Danish law should apply.  And to the extent California does have an interest in applying its law to an agreement in Danish, to be performed in Denmark, entered into in Denmark by Danish parties related to a Danish screenplay of a Danish book for a Danish film, that interest is outweighed by Denmark's interest.

In light of the preceding, it is not surprising that both parties submitted opening expert reports on Danish law, in addition to rebuttal reports.

In his Contentions of Law and Fact, Counterdefendant suggested that the Court should apply U.S. to the dispute about rights "to reproduce and distribute the Film in the U.S. territory."  Of course, that is not at all what the dispute is about, as Mr. Konski claims the right to distribute the Film in all 191 countries outside of Scandinavia, and he has already distributed the film in and collected revenue from more than 20 countries according to the agreements he has produced.  But even if he were correct that his distribution were limited to the United States, that would be no basis for applying California or U.S. law to the questions whether he obtained the rights and obligations in a Danish contract between Danish parties by entering into another contract in Denmark with the Danish Estate of one of those parties.  There is no dispute here about authorship of the screenplay or film, or about fair use, or about

---

[2] It is actually far from clear that Mr. Konski is right in his assumption, as California law does not in all circumstances permit one party to a contract to transfer its rights and obligations to a third party without the permission (or even knowledge) of its counterparty.  *See generally Farmland Irrigation Co. v. Dopplmaier*, 48 Cal.2d 208, 222 (1957).

Mr. Konski's role in causing the film to be shown throughout the world, which are the issues that the cases Mr. Konski cites suggest should be resolved under the law of the location where the allegedly infringing use occurred. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 91 (2d Cir. 1998); *Lauritzen v. Larsen*, 345 U.S. 571, 583 (1953); *Hasboro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192-93 (2d Cir. 1985); *Carbotrade S.p.A. v. Bureau Veritas*, 99 F.3d 86, 89-90 (2d Cir. 1996); *Federal Treasury Enterprise Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013).

Indeed, the lead case upon which Mr. Konski relies strongly supports Counterclaimants' position. Specifically, it holds that determining the *ownership* of a copyright is an exercise governed by the laws of the nation "with the most significant relationship to the property and the parties." *Itar-Russian News Agency*, 153 F.3d at 90 (quotation omitted). It is only the question of whether particular conduct infringes a copyright that is governed by local law. *Id.* at 90-91. (Here, if Mr. Konski did not obtain ownership, infringement is undisputed). *Lauritzen* and *Carbotrade* involved the law of the sea, not copyrights. *Hasboro Bradley* involved a situation in which a work created in Japan was not entitled to copyright protection in Japan, but was in the United States, wholly unrelated to the case at bar. And *Federal Treasury Enterprise* involved the question whether Plaintiff had *standing* to sue under the Lanham Act, which not surprisingly turned on an interpretation of U.S. law (the Lanham Act).

## III. CONCLUSION

This case involves only two simple questions. Was Mr. Konski's attempt to purchase (in Denmark) rights in two Danish contracts between a Danish company and a Danish individual from the Danish Estate of a Danish citizen related to a Danish film written and directed by a Danish citizen permissible under the law? If so, has Mr. Konski complied with his obligations under those Danish contracts?

1  Those questions are plainly governed by Danish law (and not the law of the 20+
2  countries in which Mr. Konski has distributed the Film or the 190+ countries in
3  which he claims entitlement to do so), and the Court should consider and apply to
4  those questions the evidence of Danish law that the parties' eminently qualified
5  Danish lawyers will present to the Court.

Dated:  April 14, 2014                          Respectfully submitted,

                                                Rimon P.C.


                                                _____/s/_____
                                                Richard J. Mooney
                                                Attorneys for Defendants/Counterclaimants
                                                Danish Film Directors and Gabriel Axel

# AKTIESELSKABET
# NORDISK FILMS STUDIER



MOSEDALVEJ
2500 KØBENHAVN · VALBY

TLF. (01) 301033
TELG.ADR. AIUNGILAK

24. juli 1986

Gabriel Axel
Østerhegn 38
2880 Bagsværd

Vi skal hermed bekræfte vor aftale om, at vi på vegne af A-S Panorama Film International engagerer Dem som instruktør på filmen "BABETTES GÆSTEBUD".

Det er aftalt, at De er til rådighed i hele forberedelses-, optage- og efterarbejdsperioden, indtil filmen er klar til premiere d. 27. februar 1987.

For dette modtager De en samlet gage på kr. 236.000,- for hele perioden. Honoraret udbetales efter nærmere aftale.

Herudover er det aftalt, at De modtager 3% af samtlige indtægter, producenten måtte få på filmen, indtil filmens produktionsomkostninger inkl. tilbagebetaling af støtten til Det danske filminstitut er indspillet. Herefter modtager De 10% af producentens indtægter.

Producenten har ret til at exploitere filmen på alle nu kendte og fremtidige fremførings- og distributionssystemer, herunder video, TV etc.

Vi beder Dem bekræfte Deres indforståelse med ovenstående aftale ved at underskrive og returnere medfølgende kopi af dette brev.

Med venlig hilsen

Til bekræftelse:

*[signature: Gabriel Axel]*

Bo Christensen

*Med forbehold for færdiggørelsen til 27 Februar 1987.*

AKTIESELSKABSREGISTRERINGS NR 59.878

TOTAL P.02

DEF0001



| BILAG: | 1. |
|---|---|
| Henning Hansen advokat | |

# KONTRAKT

Mellem A/S Nordisk Films Studier på vegne af Panorama Film International (i det følgende kaldet producenten) og Gabriel Axel (i det følgende kaldet forfatteren) er dags dato indgået følgende aftale.

§ 1

Forfatteren sælger og overdrager herved til producenten alle rettighederne til manuskript og drejebog til en film bygget over Karen Blixens novelle "BABETTES GÆSTEBUD".

§ 2

Disse rettigheder omfatter den eksklusive ret til at optage film i alle formater, i farve og efter alle kendte og i fremtiden evt. kommende optagelsesmetoder, såvel som rettighederne til tidsmæssigt ubegrænset at sælge og udleje filmen i hele verden, med eller uden tekster eller eftersynkroniseret, for såvel offentlige som private forestillinger, for radiofoni, television og evt. nye fremvisningsmetoder.

§ 3

Forfatteren erholder en royalty på 5% af filmens visningsindtægt, som denne er defineret i overenskomsten af 19. december 1985 mellem Danske Dramatikeres Forbund og Foreningen af danske filmproducenter.

§ 4

Som forskud på den i § 3 nævnte royalty betaler producenten til forfatteren kr. 75.000,00 (skriver syvtifemtusinde kroner). Yderligere udbetaling af royalty vil først finde sted, når producentens visningsindtægter overstiger 1.500.000,00 kr.

§ 5

I øvrigt gælder overenskomsten mellem Danske Dramatikeres Forbund og Foreningen af danske filmproducenter i det omfang, det ikke udtrykkeligt er fraveget i denne kontrakt.

DEF0002



§ 6

Eventuelle uoverensstemmelser mellem parterne om forståelsen af foranstående kontrakt afgøres endeligt og bindende ved voldgift.
Voldgiftens etablering og procedure finder sted efter de almindelige regler i lov om voldgift.

København, den 22. juli 1986

_____
Gabriel Axel

_____
A/S Nordisk Films Studier på vegne af
Panorama Film International

DEF0003

AKTIESELSKABET

NORDISK FILMS STUDIER

MOSEDALVEJ
DK-2500 COPENHAGEN VALBY

TEL. +45 (01) 301033
TELG.ADR.AJUNGILAK

24 July 1986

Gabriel Axel
Posterhegn 38
DK-2880 Bagsværd

Dear Gabriel Axel
We hereby confirm our agreement to the effect that we, on behalf of A-S Panorama Film International, engage you as the director of the film 'BABETTE'S FEAST'.

It has been agreed that you will be available during the entire preparation, recording and editing period until the film is ready for première on 27 February 1987.

For this you will receive a total salary of DKK 236,000.00 covering the entire period. The salary will be paid according to agreement.

In addition, it has been agreed that you will receive 3% of all revenue generated by the film for the producer, until the production costs of the film, including repayment of funding to the Danish Film Institute (*Det Danske Filminstitut*), have been recouped (through revenue). After that, you will receive 10% of the producer's revenue.

The producer has the right to exploit the film on all projection and distribution systems now or later known, including video, television etc.
We kindly ask you to confirm your acceptance of the above agreement by signing and returning the enclosed copy of this letter.

Yours sincerely,

I accept:

Bo Christensen

AKTIESELSKABSREGISTRERINGS NR 59 878

TOTAL P.02

APPENDIX: 1.

Henning Hansen
lawyer

## CONTRACT

Today the following Contract has been concluded between A/S Nordisk Films Studier on behalf of Panorama Film International (the 'Producer') and Gabriel Axel (the 'Screenwriter').

### Clause 1

The Screenwriter hereby sells and assigns to the Producer all rights to the manuscript and script for a film based on Karen Blixen's short story 'BABETTE'S FEAST'.

### Clause 2

These rights include the exclusive right to record films in all formats, in colour and using all now or later known methods of recording as well as the rights, for an indefinite period of time, to sell and distribute the film on a worldwide scale, with or without subtitles or dubbing for public as well as private showing, for broadcasting, television and any new methods of showing.

### Clause 3
The Screenwriter will receive a royalty of 5% of the revenue generated by the film such as defined in the collective agreement of 19 December 1985 between the Danish Dramatists' Association (*Danske Dramatikeres Forbund*) and the Association of Danish Film Producers (*Foreningen af danske filmproducenter*).

### Clause 4
As an advance on the royalty mentioned in Clause 3 above, the Producer will pay to the Screenwriter DKK 75,000.00 (say seventy-five thousand Danish kroner). Any additional royalty payment will be made when the Producer's revenue generated by the film exceeds DKK 1,500,000.00.

### Clause 5
Otherwise, the collective agreement between the Danish Dramatists' Association and the Association of Danish Film Producers applies to the extent it has not been explicitly derogated from in this Contract.

Clause 6

Any disagreement between the Parties as to the interpretation of the preceding Contract is subject to final and binding settlement by arbitration.
The establishment and procedures of such arbitration will be according to the general rules of the Danish Arbitration Act (*Lov om voldgift*).


Copenhagen, 22 July 1986


Gabriel Axel				A/S Nordisk Films Studier on behalf of
					Panorama Film International

DEF0009