SPILLANE TRIAL GROUP PLC
Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
Cathrynne D. Dale (Bar No. 206513)
cdale@spillaneplc.com
15260 Ventura Boulevard, Suite 2250
Sherman Oaks, California 91403-5338
(818) 205-1100
(888) 590-1683 (fax)

*Attorneys for Plaintiff and Counterclaim Defendant Josi W. Konski*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSI W. KONSKI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DANISH FILM DIRECTORS, a Danish association; GABRIEL AXEL, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No.: CV 13-02383-ABC (JCx)<br><br>**PLAINTIFF JOSI W. KONSKI'S MEMORANDUM ON CHOICE OF LAW**<br><br>PTC Date: April 14, 2014<br>Time: 10:00 a.m.<br>Place: Courtroom 680<br><br>Trial Date: May 6, 2014 |

Plaintiff Josi W. Konski ("Plaintiff" or "Konski") hereby submits his Memorandum re Choice of Law pursuant to this Court's Order of April 4, 2014, Doc 52.

Konski respectfully urges that there is not a singular question before the Court concerning whether U.S. or Danish law applies to "this case." Rather, the trial will present a number of issues that may each call for choice of law analyses. Konski believes that choice of law principles, where applicable, all tilt toward application of U.S. law.

## CHOICE OF LAW PRINCIPLES

The Copyright Act itself does not address conflict of laws issues, and therefore the federal courts are to develop federal common law on conflicts pertaining to copyrights. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90 (2d Cir. 1998). "The choice of law applicable to the pending case is not necessarily the same for all issues." *Id.* Concerning ownership of copyright, a form of property, under traditional choice of law principles, "interests of the parties in property are determined by the law of the state 'with the most significant relationship' to the property and the parties." *Id.,* citing *Restatement (Second) Conflict of Laws § 222.*[1] With respect to issues

---

[1] "Federal common law follows the approach of the Restatement (Second) of Conflict of Laws (1969)." *Chuidian v. Philippine Nat. Bank*, 976 F.2d 561, 564 (9th Cir. 1992). Section 222 provides: "The interests of the parties in a thing are determined, depending upon the circumstances, either by the 'law' or by the 'local law' of the state which, with respect to the particular issue, has the most significant relationship to the thing and the parties under the principles stated in § 6." Section 6 provides: "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the

1  of copyright infringement, however, the law of the forum applies: "[T]he
2  governing conflicts principle [concerning infringement] is usually *lex loci*
3  *delicti,* the doctrine generally applicable to torts. *See Lauritzen v. Larsen,* 345
4  U.S. 571, 583, 73 S.Ct. 921, 97 L.Ed. 1254 (1953)." *Id.* at 91.

5  Further, procedural matters, including standing, should be governed by
6  the law of the forum. *Itar-Tass, supra*, 153 F.3d at 91 ["Under United States
7  law, an owner (including one determined according to foreign law) may sue for
8  infringement in a United States court only if it meets the standing test of 17
9  U.S.C. § 501(b), which accords standing only to the legal or beneficial owner of
10 an 'exclusive right.'"]; *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits
11 Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013), *cert. denied*, 2014 WL 684490 (U.S. Feb.
12 24, 2014) (in case of alleged infringement of "Stolichnaya" marks in the U.S.,
13 U.S. and not Russian law would determine whether plaintiff had standing as an
14 "assign" or "legal representative" with standing to sue under the Lanham Act).

## ARGUMENT

**I.   KONSKI'S CLAIM FOR DECLARATORY RELIEF SHOULD BE DECIDED UNDER U.S. LAW.**

**A.   Choice of Law Principles Tilt Toward Application of U.S. Law.**

Choice of law principles tilt toward application of U.S. law to the sole Claim for Relief in Konski's Complaint, for Declaratory Relief based upon copyright. The Complaint pleads a controversy concerning Konski's rights to license reproduction and distribution of *Babette's Feast* (the "Film") in the U.S.

relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

and Canadian territories.  The Complaint seeks declaratory relief that Konski holds the rights to reproduce and distribute the Film in the U.S. and Canadian territories and that Defendants hold no rights that would justify interference with such reproduction and distribution in such territories.  Complaint ¶ 24.

Here, Konski is a U.S. citizen residing in California.  It is true, as Defendants will point out, that the Film was created in Denmark, and was directed and based upon a screenplay authored by Mr. Axel.  However, Mr. Axel assigned his rights in the Film to the producer of the Film, Panorama, Just Betzer's production company.  Exs. 7, 8.  At the time the Film was first released in 1987, Panorama recorded a Certificate of Copyright for the Film with the U.S. Copyright Office.  Ex. 26.  After Just Betzer's death, the executors of his estate, with powers to convey his assets and those of his companies, sold all right, title and interest in and to his film library, including "*Babette's Feast*," to Konski.  Exs. 101 ("Quitclaim Release"), 109 ("General Terms and Conditions").  Konski then entered into a distribution agreement with Astrablu Media, Inc., Ex. 107, a company located in Los Angeles, which in turn entered into a sub-distribution agreement with Janus Films Company, or "Criterion," a U.S. company, to distribute the Film in the U.S. and Canadian territories.  Ex. 111.  The Danish Film Directors directed a communication to Criterion claiming that Konski owned no copyright in the Film, in an unwarranted effort to interfere with distribution of the Film in the U.S.  Ex. 2.

Application of the Restatement factors militates in favor of application of U.S. law to Mr. Konski's declaratory relief claim.  Mr. Konski is a U.S. citizen acting under an assignment of copyright from the Film's owner, which granted all right, title and interest in the Film to Mr. Konski.  Any putative rights of Mr. Axel were assigned to the Film's producer and subsequently to Mr. Konski.  Mr. Konski therefore had a "justified expectation" that he was purchasing the exclusive copyright to the Film from its owner, free of any undisclosed and

obscure principal of Danish law that supposedly limited or defeated Mr. Konski's ability to continue to distribute the Film.  Application of U.S. copyright law to copyrights purchased by U.S. citizens and exploited in the U.S. would vindicate the interests of the U.S. in protecting its citizens.  Application of U.S. law to such claims would also assure "certainty, predictability and uniformity" of result concerning exploitation of assigned copyrights in the U.S.  Finally, it should be noted that the only actions of Mr. Konski have been to assure continued distribution of the Film in the modern DVD and Bluray formats, which serves both Danish interest in continued distribution of this Academy-award winning film and U.S. interests in protecting the rights of its citizens.

Defendant may rely upon *Itar-Tass*, *supra*, where Russian law was applied to determine ownership of works created by Russian nationals and first published in Russia, however, there are important differences between that case and this one.

The *Itar-Tass* the plaintiffs were foreign nationals suing on rights they claimed to have derived from initial creation of the works in the country of origin.  The *Isar-Tass* court expressly declined to comment on whether country of origin would determine choice of law regarding ownership of *assigned* copyrights, such as those at issue here.  *Id.* at 91 n.11.

Further, *Itar-Tass* involved important differences between Russian and U.S. law on the key issue of work-for-hire.  Here, the Defendants have not identified a material difference between U.S. and Danish law concerning the ability of creators of a copyrighted work to assign their rights to exploit the work to the producer.  This is precisely what Mr. Axel did in this case, and thus under either U.S. or Danish law, he could not and his heirs cannot complain of continued distribution of the Film.

Prior to the litigation, the Danish Film Directors said that the producer, Panorama, had been free to assign the copyright to the Film to Mr. Konski, so long as Mr. Konski honored Mr. Axel's contracts rights to a share of revenues.

Later, the Danish Film Directors claimed that while an artist could assign exploitation rights to a producer, he would retain certain artistic rights under Section 56 of the current Danish Copyright Act, not unlike "moral rights."[2] The Danish Film Directors ginned up this new position to push Mr. Konski to pay Mr. Axel. However, continued distribution of the Film by Mr. Konski did not offend Section 56 or any retained artistic rights of Mr. Axel. Mr. Konski has digitized the Film and is causing its distribution as originally released in modern formats, DVD and Bluray, which is no offense to either the integrity of the Film or attribution to Mr. Axel as the Film's director and screenwriter.

The Defendants' third copyright position has been taken by their Danish law expert, Mr. Schonning. Mr. Schonning agrees that "[u]nder Danish law, copyright rights may be assigned or licensed to third parties," Ex. 202 ¶ 21, and that "[u]nder Danish copyright law, a purchaser or licensee of copyright rights is free to exploit the work as permitted by the agreement." Ex. 202 ¶ 22. Mr. Schonning claims, however, that since the Film was created in 1987, the copyright to the Film would be governed by the 1961 Danish copyright law,

---

[2] U.S. law does not recognize an artist's "moral rights" under copyright by many European laws do. *Eldred v. Ashcroft*, 537 U.S. 186, 259, 123 S. Ct. 769, 810, 154 L. Ed. 2d 683 (2003). Even if the Danish concept of "moral rights" applied here, they are not offended. "Moral rights" may include an artist's rights to preserve integrity of a work and receive attribution, Roberta Rosenthal Kwall, "Author-Stories:" Narrative's Implications for Moral Rights and Copyright's Joint Authorship Doctrine, 75 S. Cal. L. Rev. 1, 23 (2001).

which prohibits reassignment of assigned rights except in connection with transfer of a business or business department.  Ex. 202 ¶¶ 22, 23.  Mr. Schonning states that since he does not view sale of the film library of Just Betzer and his companies as sale of a business or business department, the rights to exploit the Film supposedly died with Just Betzer.  The Defendants have not explained how this bizarre result either vindicates the interests of Denmark or the U.S. or supports "certainty, predictability and uniformity of result" in the sale and exploitation of copyrighted works.

### B. Principles of Infringement and Standing Support Application of U.S. Law.

Two other principles weigh in favor of application of U.S. law to Konski's sole claim for relief – infringement and standing.

Here, the Defendants interfered with the exploitation of copyright by a U.S. citizen, through a U.S. distributor in the U.S. territory.  The situs of the interference was the U.S. forum.  The doctrine of *lex loci delicti* warrants application of U.S. law to these actions.

Neither of the Defendants has standing to seek determination of the merits of Mr. Konski's copyright claim, nor to assert interests in copyright.  The Danish Film Directors admitted in their deposition that they do not claim any copyright or contract in interest in the Film.  The Defendants admit that Mr. Axel granted, at the very minimum, rights to exploit the Film through reproduction and distribution to Just Betzer's company, Panorama.  Thus Mr. Axel retained no copyright interest sufficient to grant him standing to challenge distribution of the Film.  *17 U.S.C. § 501(b)*.

## II. THE FIRST CLAIM FOR RELIEF IN THE COUNTERCLAIM SHOULD BE DECIDED UNDER U.S. LAW.

The First Claim for Relief in the Counterclaim contains two distinct claims for relief – one for a declaration under Danish copyright law,

1  Counterclaim ¶ 20, and a second for a declaration that Mr. Axel is supposedly
2  entitled to 15% of all revenues obtained from exploitation of the Film.
3  Counterclaim ¶ 21.
4      The declaratory relief claim based upon copyright should be decided –
5  indeed dispatched – under U.S. principles of standing and controversy.
6      Whether or not Mr. Axel retains any form of "author's" or "director's"
7  copyright under Section 56 of the current Danish copyright law, the only
8  controversy between the parties concerns Mr. Konksi's right to authorize
9  continued distribution of the Film true to its original release but in the modern
10 DVD and Bluray formats. The Danish Film Directors admitted that the current
11 distribution of the Film does not offend any artist's rights retained by Mr. Axel,
12 if any. *28 U.S.C. § 2201* (the court may only resolve actual controversies).
13 Further, the Defendants do not contest that Mr. Axel assigned any rights he may
14 have retained to reproduce and distribute the Film, and thus he holds no
15 exclusive distribution right such that would give him standing to challenge the
16 distribution of the Film here at issue. The Danish Film Directors admitted in
17 their deposition that they do not claim any copyright or contract in interest in
18 the Film. Thus, neither Mr. Axel nor the Danish Film Directors have standing
19 to assert copyright claims challenging distribution of the Film. *17 U.S.C. §*
20 *501(b)*.
21     Concerning the contract claim arising from Mr. Axel's director's and
22 screenwriter's agreements, the Defendants have not identified any difference
23 between applicable U.S. and Danish law concerning interpretation of
24 enforcement of agreements, nor any compelling interest justifying application
25 of Danish law to resolution of the contract claims. According to the report of
26 Defendants' expert, Mr. Schonning, Mr. Axel and Just Betzer's company were
27 free to form and enforce contracts to assign Mr. Axel's copyright interest in the
28 Film to Panorama in exchange for certain payment rights, Ex. 202 ¶¶ 9-15, but

the same could be said concerning California contract law. Absent any such difference, a claim against a U.S. citizen in a U.S. court should be decided under applicable U.S. law.

## III. THE SECOND CLAIM FOR RELIEF IN THE COUNTERCLAIM SHOULD BE DECIDED UNDER U.S. LAW.

The second claim for relief should be decided – indeed dispatched – under U.S. principles of failure to state a claim for relief. There exists no cause of action under California law for "unjust enrichment," which is synonymous with the remedy of restitution. *Levine v. Blue Shield of California*, 189 Cal. App. 4th 1117, 1138, 117 Cal. Rptr. 3d 262, 278 (2010).

## IV. THE THIRD CLAIM FOR RELIEF IN THE COUNTERCLAIM SHOULD BE DECIDED UNDER U.S. LAW.

The third claim for relief in the Counterclaim is for breach of contract. This claim should be decided under U.S. law for the reasons stated above.

DATED: April 14, 2014         SPILLANE TRIAL GROUP PLC

By: ___*Jay M. Spillane*___
Jay M. Spillane
*Attorneys for Plaintiff and Counterclaim Defendant Josi W. Konski*