Richard Mooney, Esq. (SBN 176486)
    richard.mooney@rimonlaw.com
Rimon, P.C.
One Embarcadero Center #400
San Francisco, California  94111
Telephone:  (415) 539-0443
Facsimile:  (800) 930-7271

Attorneys for Defendants/Counterclaimants
Danish Film Directors and Gabriel Axel

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFRONIA

| | |
|---|---|
| Josi Konski, an individual, | Case No. CV13-02383 ABC (JC) |
| Plaintiff, | Defendants/Counterclaimants' Trial Brief re Declaration Admissibility |
| v. | |
| Danish Film Directors, a Danish association; Gabriel Axel, an individual, | Date: |
| Defendants. | Time:<br>Crtrm: |
| and related counterclaims | |

Counterclaimants respectfully request that the Court admit into evidence the Declaration of Gabriel Axel, which provides evidence of non-controversial facts and authenticates a small number of documents that either (1) have been agreed to be admissible by the parties, or (2) were produced by Counterdefendant himself. Federal courts have routinely admitted declarations at trial in much more controversial situations, and there is no reason to exclude the declaration here.

## I.  BACKGROUND

### A.  Procedural Background

Soon after discovery began in this case, Mr. Konski sought to take the 30(b)(6) deposition of Danish Film Directors (which he did) and Mr. Axel. *See* Declaration of Richard Mooney filed herewith ("Mooney Decl.") ¶ 2. At the time, Mr. Axel was 95 years old, was in generally poor health, and had recently fallen and broken a hip. *Id.* Counsel for Counterclaimants therefore informed counsel for Mr. Konski that Mr. Axel was too weak for a deposition. *Id.* Counsel for the parties discussed the issue, and Mr. Konski's counsel offered to end his pursuit of Mr. Axel's deposition in exchange for an agreement that Mr. Axel "will not testify at trial," an offer that was accepted in a November 6 email. *Id.* & Exh. A.

On November 12, Mr. Konski's counsel sent a draft stipulation that would have changed the agreement to cover affidavits and declarations. Mooney Decl. ¶ 3. On November 13, Counterclaimants' counsel rejected that stipulation on the ground that the agreement did not cover declarations. *Id.* Counterclaimants did, however, offer to forego a declaration from Mr. Axel if Mr. Konski would agree to the authenticity of certain documents. *Id.* Mr. Konski did not respond to that proposal. *Id.* Counterclaimants reiterated the proposal in a November 25 letter. *Id.* & Exh. B. Again Mr. Konski did not respond to the proposal. *Id.* Counterclaimants reiterated the proposal in a January 7 letter. *Id.* & Exh. C. Again Mr. Konski did not respond to the proposal. *Id.* Mr. Konski did not file a motion seeking to compel a

deposition, even after his effort to expand the "will not testify at trial" agreement to include declarations. *Id.* Mr. Konski did not request a copy of the declaration until April 14, and was provided a copy less than 24 hours later. *Id.*

### B. Mr. Axel's Declaration

Mr. Axel's declaration (filed herewith; the "Axel Decl.") does not offer controversial or disputed testimony. Rather, it performs two pedestrian functions. *First*, it provides admissible evidence of undisputable facts known throughout the world (that Mr. Axel wrote the screenplay for *Babettes gæstebud*, that he directed the film of the same name, and that it won an Oscar). *Second*, it authenticates the 1986 Agreements that he entered into with Panorama Film International and the decision of the arbitrators in the 1997 arbitration between Mr. Axel and Just Betzer. The parties have already agreed that the 1986 Agreements are authentic and admissible. *See* Joint Exhibit List (Docket No. 40) at 2 (listing Exhibits 102 and 103, the 1986 Agreements) and Joint Proposed Pre-Trial Conference Order (Docket No. 51-1) at 11 (not objecting to Exhibits 102 or 103). And although Mr. Konski did object to the admissibility of the arbitration award, it was produced from his own files and its main result (that Mr. Betzer was permitted to deduct 20% of revenues for expenses) is corroborated by other admissible evidence such as Mr. Betzer's subsequent royalty statements to Mr. Axel (e.g., Exh. 105, showing the 20% reduction, attached as Exhibit D to the Mooney Decl.).

## II. ARGUMENT

A hearsay statement is admissible under the "catch-all" exception to the hearsay prohibition under the following circumstances:

**(a) In General**. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:

>**(1)** the statement has equivalent circumstantial guarantees of trustworthiness;
>
>**(2)** it is offered as evidence of a material fact;
>
>**(3)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>
>**(4)** admitting it will best serve the purposes of these rules and the interests of justice.
>
>**(b) Notice.** The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

FRE 807.

   The Axel declaration meets each of these requirements. *First*, it has equivalent circumstantial guarantees of trustworthiness. It was signed under oath and under penalty of perjury. The facts it avers (his authorship and directorship and the Oscar award) are well-known throughout the film industry; are easily verified by looking at Wikipedia, IMDB, or dozens of other on-line sources; and are consistent with the admittedly admissible 1986 Agreements and multiple royalty statements. Indeed, Mr. Konski has never disagreed with those facts. Similarly, the 1986 Agreements the declaration authenticates are themselves admittedly admissible; are consistent with the royalty practices of Panorama and the agreement with Orion, among other documents; and again are not disputed by Mr. Konski, who has admitted that he is bound by their requirements if he is entitled to their benefits. And the 1997 arbitration ruling was produced by Mr. Konski himself, is corroborated by

royalty statements issued after the arbitration, and is consistent with the anticipated testimony of Mr. Axel's daughter Ms. Mørch.

*Second*, there is and can be no question that the identity of the author and director of the film is relevant, as are the contracts pursuant to which Mr. Konski claims the right to distribute the film and the terms of those contracts.

*Third*, the personal testimony of the person who wrote the screenplay and directed the film and entered the contracts and was a party to the arbitration is the best available evidence on each of those points.

*Fourth*, because it is the best available evidence for each of these relevant points, admitting the declaration will best serve the purposes of the FRE and the interests of justice.

*Fifth*, Mr. Konski has known since November that a declaration along these lines would be offered, and was provided a copy immediately upon requesting one.

Federal courts have routinely admitted declarations from a deceased witness at trial in circumstances much more controversial than those here (where the controversy is reduced even further since the trial is to the Court). In *Cynergy, LLC v. First American Title Insurance Co.*, 706 F.3d 1321 (11th Cir. 2013), for example, the Court considered the admissibility of an affidavit obtained from a witness who was undergoing treatment for cancer at the time he signed the affidavit and died before the affidavit was produced and used as the key piece of evidence at summary judgment. *Id.* at 1329. The Court addressed Plaintiff's argument that the affidavit should not have been considered at summary judgment because it "would have been inadmissible at trial." *Id.* The court rejected that argument, holding that the affidavit was the best available evidence on the disputed issue and that the fact that plaintiff did not learn of the affidavit until after the signatory had passed away did not mean plaintiff had inadequate notice when notice was provided in advance of the summary

judgment briefing. *Id.* at 1329-30. Similarly in *Justak Brothers & Co. v. NLRB*, 664 F.2d 1074 (7th Cir. 1981), the court held that a declaration from a witness who could not be located at the time of the NLRB hearing before an administrative law judge was properly admitted because it "had probative value" and that it was "given under oath [and] therefore had 'equivalent guarantees of trustworthiness.'" *Id.* at 1081 (citations omitted). Indeed, courts have even admitted such declarations in trials against criminal defendants, who obviously are entitled to greater protection against the introduction of hearsay than a civil litigant. *See*, *e.g.*, *United States v. Weinstock*, 863 F. Supp. 1529, 1535 (D. Utah 1994) (affidavit from deceased witness admissible because the credibility of the witness had not been challenged, the "general circumstances" surrounding the affidavit supported its credibility, and other evidence in the case tended to corroborate it).

### III.  CONCLUSION

For all the reasons detailed above, Counterclaimants respectfully request that Mr. Axel's non-controversial declaration be admitted (with the Court of course entitled to give it such weight as the Court believes appropriate).

Respectfully submitted,

Dated:  April 18, 2014        Rimon P.C.

_____/s/_____
Richard J. Mooney
Attorneys for Defendants/Counterclaimants
Danish Film Directors and Gabriel Axel

5

*Konski v. Danish Film Directors* (Case No. CV13-02383 (ABC (JC))
Defendants/Counterclaimants' Trial Brief re Declaration Admissibility