Richard Mooney, Esq. (SBN 176486)
Rimon, P.C.
One Embarcadero Center #400
San Francisco, California  94111
Telephone:  (415) 539-0443
richard.mooney@rimonlaw.com

Attorneys for Defendants and Counterclaimants
Danish Film Directors and Gabriel Axel

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Josi Konski, an individual, | Case No. cv13-02383 ABC |
| Plaintiff, | Declaration of Gabriel Axel |
| v. | |
| Danish Film Directors, a Danish association; Gabriel Axel, an individual, | |
| Defendants. | |
| and related counterclaims | |

I, Gabriel Axel, declare as follows.

1.     I make this declaration based on my own personal knowledge, based upon my own personal recollection of events and documents.

2.     I was born in Denmark, and speak and read Danish fluently. I speak and read some English. I have had assistance confirming that the following statements are true in the English language by my daughter Karin Morch, whose native language is Danish and who speaks and reads English fluently.

3.     Although I am 95 years old, I retain my ability to understand events and my surroundings, my ability to recall significant events in my life accurately from my memory, and my ability to communicate clearly with others.

4.     I have been told that my age and physical condition make it impossible for me safely to travel to Los Angeles to testify in a trial in this matter.

5.     In 1985 and 1986, I wrote the screenplay for the film *Babettes gæstebud*, known in English as *Babette's Feast*, based on the story of the same name by the famous Danish writer Karen Blixen.

6.     In 1986 and 1987, I directed *Babette's Feast*, which was released in 1987. Among other awards, *Babette's Feast* won the 1987 Oscar for Best Foreign Language Film.

7.     In July 1986, I entered into two agreements with Panorama Film International, a screenwriter agreement and a director agreement. I recognize the documents attached to this declaration as Exhibits A and B, and confirm that they are accurate copies of the agreements that I entered into.

[rest of page intentionally blank]

1        8.    In 1997, I had an arbitration in Denmark with Just Betzer, who was the

2    owner of Panorama Film International.  I recognize the Danish language portion of the document

3    attached to this declaration as Exhibit C, and confirm that it is an accurate copy of the arbitrators'

4    decision.

5

6        I declare under penalty of perjury under the laws of the United States and the State

7    of California that the foregoing is true and Correct.  Executed on December 27th, 2013, in

8    Copenhagen, Denmark.

9

10

11    _____

12        Gabriel Axel

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

AKTIESELSKABET
# NORDISK FILMS STUDIER



MOSEDALVEJ
2500 KØBENHAVN · VALBY

TLF. (01) 301033
TELG ADR. AIUNGILAK

24. juli 1986

Gabriel Axel
Østerhegn 38
2880 Bagsværd

    Vi skal hermed bekræfte vor aftale om, at vi på vegne af
A-S Panorama Film International engagerer Dem som instruktør
på filmen "BABETTES GÆSTEBUD".

    Det er aftalt, at De er til rådighed i hele forberedelses-, optage-
og efterarbejdsperioden, indtil filmen er klar til premiere d. 27. februar
1987.

    For dette modtager De en samlet gage på kr. 236.000,- for hele
perioden.  Honoraret udbetales efter nærmere aftale.

    Herudover er det aftalt, at De modtager 3% af samtlige indtægter,
producenten måtte få på filmen, indtil filmens produktionsomkostninger
inkl. tilbagebetaling af støtten til Det danske filminstitut er indspillet.
Herefter modtager De 10% af producentens indtægter.

    Producenten har ret til at exploitere filmen på alle nu kendte og
fremtidige fremførings- og distributionssystemer, herunder video, TV etc.

    Vi beder Dem bekræfte Deres indforståelse med ovenstående aftale
ved at underskrive og returnere medfølgende kopi af dette brev.

                  Med venlig hilsen

Til bekræftelse:

                              Bo Christensen

*Gabriel Axel*

*Med forbehold for færdiggørelsen til 27 Februar 1987.*

AKTIESELSKABSREGISTRERINGS NR 59.878.

DEF0001

Exhibit B



Exhibit 103
Wit Konski
R. Alossi, RPR, CCRR, CSR 13497

BILAG:

Henning Hansen
advokat



K O N T R A K T

Mellem A/S Nordisk Films Studier på vegne af Panorama Film International
(i det følgende kaldet producenten) og Gabriel Axel (i det følgende kaldet
forfatteren) er dags dato indgået følgende aftale.

§ 1

Forfatteren sælger og overdrager herved til producenten alle rettighederne
til manuskript og drejebog til en film bygget over Karen Blixens novelle
"BABETTES GÆSTEBUD".

§ 2

Disse rettigheder omfatter den eksklusive ret til at optage film i alle formater,
i farve og efter alle kendte og i fremtiden evt. kommende optagelsesmetoder,
såvel som rettighederne til tidsmæssigt ubegrænset at sælge og udleje filmen
i hele verden, med eller uden tekster eller eftersynkroniseret, for såvel offent-
lige som private forestillinger, for radiofoni, television og evt. nye fremvisnings-
metoder.

§ 3

Forfatteren erholder en royalty på 5% af filmens visningsindtægt, som denne
er defineret i overenskomsten af 19. december 1985 mellem Danske Dramatikeres
Forbund og Foreningen af danske filmproducenter.

§ 4

Som forskud på den i § 3 nævnte royalty betaler producenten til forfatteren
kr. 75.000,00 (skriver syvtifemtusinde kroner). Yderligere udbetaling af
royalty vil først finde sted, når producentens visningsindtægter overstiger
1.500.000,00 kr.

§ 5

I øvrigt gælder overenskomsten mellem Danske Dramatikeres Forbund og
Foreningen af danske filmproducenter i det omfang, det ikke udtrykkeligt
er fraveget i denne kontrakt.

DEF0002



§ 6

Eventuelle uoverensstemmelser mellem parterne om forståelsen af foranstående
kontrakt afgøres endeligt og bindende ved voldgift.
Voldgiftens etablering og procedure finder sted efter de almindelige regler i
lov om voldgift.

København, den 22. juli 1986

Gabriel Axel                           A/S Nordisk Films Studier på vegne af
                                       Panorama Film International

DEF0003

**Exhibit C**

Exhibit 10 4
Wit____Konski
R. Alossi, RPR, CCRR, CSR 13497

Arbitration 30. Sept 1997

Film director Gabriel Axel

Vs

Panaroma Film International, manager Just Betzer

DECISION

This matter concerns whether respondent, Panorama Film International/ manager Just Betzer, before calculating royalty to claimant, film director Gabriel Axel, as payment for his contribution as writer and director of the film "Babette's Feast", in addition to distribution costs can deduct launching costs etc. Gabriel Axel agrees that irrespective of agreed-upon contracts it is customary to deduct 20% for distribution costs, before calculating royalty.

This matter was commenced 3. July 1996.

Assertions:

Claimant asserts that respondent is obligated to pay 232.631 Dkr plus interest of the owed amounts from February 1 of the year following, alternatively from March 19, 1996, i.e. starting from the time this case started. In addition, that respondent is to pay 38.924,02 Dkr plus interest from the start of the case until payment has been made.

Respondent claims acquittal.

Details of this case:

According to a contract dated July 22, 1986, Gabriel Axel transferred all rights in and to manuscript and screenplay for the film "Babette's Feast" to A/S Nordisk Studios on behalf of Panorama Film International. The contract was written by Nordisk Film. In paragraph 3 is stated that "the writer retains a royalty of 5% of the film's income from being shown, as such is defined in agreement dated December 20, 1985 between Danish Dramatic Writer's Association and the Organization of Danish film producers."

Income from a film's earnings from being shown is defined in paragraph 10 re. royalty, thusly:

"By income from a film's being shown is understood all income due the producer as his rights, according to paragraph 8, 1. In regard to specifically TV showings it is pointed out that the net income due producer amounts to the payment made by TV-companies less 30%...."

In addition is stated:

"Royalty is to be paid to entitled parties at least once yearly in accordance with accounting from distributor or other parties who cause payments to the producer. Producer is obligated, if requested by writer, to deliver an overview, yearly, confirmed by a CPA, of the income from the film's showing."

KONSKI00125

Two days after the signature of the writer's agreement Nordisk Studios confirmed, on behalf of respondent, that Gabriel Axel was hired as director of the film and for a specific salary until the film's premiere. In addition it was agreed:

"that he was to receive 3% of all income received from the film, until the film's production costs incl. repayment of subsidy from The Danish Film Institute had been made. Thereafter, he is to be paid 10% of the producer's income.

Gabriel Axel received the first accounting from respondent's accountant including income and expenses as of February 29, 1988. The costs herein amounted to approximately 50% of the income. In subsequent accountings, the listed costs dropped to what is normally very small amounts in comparison with income. The accountings were accompanied by several columns of information w/numbers, text in English, assumingly containing income and expenses re the film. Later, the accountings from the Danish accountant stopped but Gabriel Axel still received various accounting overviews listing such descriptions as "23% distribution fee" and "10% Extra Fee August Ent."

Respondent's accountant created an overview on February 24, 1995 of the film's income and expenses from August 1987-December 31, 1994. The accountant added this comment:

"Our overview does not reflect whether the accountings have been made in accordance with agreements entered into with The Film Institute, the Consortium, distributors, directors, etc."

From the income accounting it showed that deducted expenses not only related to distribution but also to launching. Also, the various expenses were listed in two attachments. A written communication dated March 15, 1995 from the Association of Danish Film Directors, on behalf of the claimant, to respondent, asserted Gabriel Axel's due royalty of 232.631 Dkr, stating that irrespective of agreements entered into, it was authorized to deduct 20% in distribution costs before calculating royalty.

In a communication dated February 16, 1996 Gabriel Axel's attorney stated "ex tuto… request for payment according to interest-law paragraph 3.2, according to which interest is to be paid as of March 19, 1996 of all amounts owed…"

To determine this matter, a number of communications and declarations were obtained, as regards customary deductions before calculating royalty, including examples of director agreements, etc. Some of these indicate that royalty is not calculated after both distribution- and launching expense have been deducted. Others show that only distribution costs are deducted while yet others calculate royalty without deduction of costs."

(then follows declarations from various people, including Gabriel Axel, Just Betzer, Ebbe Preisler, director Soren Kragh Jacobsen, manager in Tele Danmark Bo Christensen, manager of Nordisk Film Erik Crone and CPA Erik Jorgensen)

Procedure:

Claimant states that it is clear from the agreements entered into that royalty should be calculated based on producer's gross income. Therefore, there is no foundation for interpretation of such agreements, but that they should be interpreted in accordance with claimant's concepts. The 20% deduction for distribution costs should have been clear from the contracts but claimant accepts this deduction because it is customary.

Claimant, having received the accounting calculations, has not accepted the method of accounting, which he first realized as he received the income statement dated February 24, 1995. There had been a good and full of confidence collaboration between the parties, and Gabriel Axel did not, based on the provided material, find any reason to suspect that anything was wrong. He is unaccustomed to go through accountings. He assumed the large deductions at the beginning would be settled which also did take place relatively quickly.

Claimant has not changed his point-of-view that in 1986 existed a custom to also deduct launching costs. Various declarations from witnesses indicate different interpretations of this issue.

Regarding the fact that Gabriel Axel was unable to interpret the provided accountings, it is stated that his claim according to the 1908 law should not be out of date.

If the arbitration finds that respondent has the right to deduct launching costs, it is stated that these expenses are not launching costs in addition to which they are not documented.

Regarding the issue of interest payment it is indicated by the Dramatic Association agreement that royalty is payable once yearly, according to which interest is due of the yearly due amount, alternatively one month after February, 1996.

Respondent has stated that claimant's demand of payment from the period before July 3, 1991 is no longer valid, having been rendered out-of-date in accordance with the 1908 law, paragraph 2, since claimant had been receiving ongoing accountings and he had also been in contact with the CPA whereby any vagueness could have been clarified. Respondent's accountings of royalties to claimant during the period since the premiere of "Babette's Feast" in 1987 have been in accordance with agreements entered into, and claimant, having currently been receiving accountings from respondent and respondent's CPA, had full insight in to the applied principles for calculation of royalties, and the accountings provided by respondent were made in accordance with commonly accepted practice in the film industry and in such a manner that the calculation methods  were completely understandable – especially to claimant who had many years of experience within the film industry.  Utilizing this method of calculation, which had taken place uncontested during eight years, the parties had established an interpretation, binding for both sides, of the notion of "producer's income" which according to the foundation for the agreement is the basis for calculation of royalties to claimant. Adding hereto, that the provided accountings were in accordance with existing standards in the film industry – both in Denmark as well as internationally. The custom of such accounting is that not until a film has been launched, will there be any income. All deducted expenses were related to this project including the so-called force majeure expenses to, for example, attorney and CPA. To claimant's assertion regarding interest respondent asserts that the earliest any interest could be considered would be from the time of the

KONSKI00127

date of this case, in accordance with the interest law paragraph 3, 4., alternatively from March 19, 1996 in accordance with claimant's request of February 16, 1996, ref. interest law paragraph 3,2.

Arbitration Court comments:

The provided contracts as well as the witness testimonies given do not show that a specific calculation method exists. It is therefore not confirmed that the accounting methods used up to this time between the parties are in accordance with an established custom and practice in the film industry, at the time of the agreement entered into by the parties in 1986, adding that claimant has accepted that before royalty is calculated 20% of distribution costs can be deducted.

Before entering into the agreement in 1986, Gabriel Axel had obtained a commitment from The Danish Film Institute of production subsidy of 9 million Dkr, and by choosing Just Betzer as the producer a promise from same that he would receive the best possible contract, ever. In this regard, and taking into consideration the verbiage of the agreements, we do not find any basis to interpret the agreements so that any other costs than those of distribution can be deducted before royalty calculation.

The accountings, including all information therein, received by Gabriel Axel since 1988 are not found to be of a type and of such singular specific interpretation that Gabriel Axel can be presumed to have accepted a change in the agreements entered into and as to the understanding of "producer's income."

It must also be stated that Gabriel Axel, by his receipt of accountings and his frequent contact with respondent's CPA, had occasion to start investigations which would have made it possible to make an earlier claim. The portion of claimant's claim that relates to the period before July 3, 1991 is therefore outdated, in accordance with out-of-date law of 1908, paragraph 2.

None of the agreements contain provisions about the issue of out-of-date for the agreed royalty, wherefore the claim is to draw interest only from March 19, 1996 regarding claimant's interest request of February 16, 1996, ref. interest law paragraph 3,2.

Each party is to cover his own costs and is to pay half of costs to The Arbitration Court.

HEREBY IS DECLARED

Respondent, Panorama Film International, manager Just Betzer, is to pay, within 14 days, to the claimant, film director Gabriel Axel, 95.479 Dkr plus interest of 60.879 Dkr from March 19, 1996 and 34.600 Dkr from July 3, 1996.

Each party is to cover his own costs and is to pay half of costs to The Arbitration Court.

(signed and dated Oct. 8, 1997)

KONSKI00128

BBBB

Afsagt den 30. september 1997.


Voldgiftssag                 Filminstruktør Gabriel Axel
                                  mod
                      Panorama Film International
                      v/ direktør Just Betzer.


### K E N D E L S E


Voldgiftssagen drejer sig om, hvorvidt indklagede, Panorama
Film International v/ direktør Just Betzer, før beregning af
royalty til klageren, filminstruktør Gabriel Axel, for dennes
indsats som forfatter og instruktør på filmen "Babettes Gæste-
bud" ud over distributionsomkostninger kan fratrække lance-
ringsomkostninger m.v.  Gabriel Axel er enig i, at det uanset
de indgåede kontrakter er fast kutyme at fratrække 20% i di-
stributionsomkostninger, før der beregnes royalty.

Sagen er anlagt ved klageskrift af 3. juli 1996.

Påstande:

Klageren har påstået indklagede tilpligtet at betale 232.631
kr. med procesrente år for år af det da forfaldne beløb fra 1.
februar i det følgende år, subsidiært fra den 19. marts 1996,
mest subsidiært fra sagens anlæg. Endvidere at indklagede til-
pligtes at betale 38.924,02 kr. med procesrente fra sagens an-
læg og til betaling sker.

Indklagede har påstået frifindelse.

**Sagens omstændigheder:**

Ved kontrakt af 22. juli 1986 overdrog Gabriel Axel alle ret-
tigheder til manuskript og drejebog til filmen "Babettes
Gæstebud" til A/S Nordisk Studier på vegne Panorama Film In-
ternational. Kontrakten var affattet af Nordisk Film. Det

KONSKI00129

- 2 -

fremgår af § 3, at "forfatteren erholder en royalty på 5% af
filmens visningsindtægt, som denne er defineret i overens-
komsten af 20. december 1985 mellem Danske Dramatikeres For-
bund og Foreningen af danske filmproducenter".

Visningsindtægterne er defineret i overenskomstens § 10 om ro-
yalty således:

> "Ved filmens visningsindtægter forstås alle produ-
> centen tilkommende indtægter ved udnyttelsen af de
> producenten i henhold til § 8, stk. 1, tillagte
> rettigheder. Specielt for så vidt angår TV-visning
> bemærkes, at den producenten tilkommende net-
> toindtægt udgør det af TV-selskabet betalte veder-
> lag med fradrag af 30% .....".

Det hedder endvidere:

> "Royalty udbetales til de berettigede mindst een
> gang om året til de terminer, der følger afregning
> fra udlejer eller andre, der foretager indbetaling
> af visningsindtægter til producenten. Producenten
> er forpligtet til på anfordring fra forfatteren år-
> ligt at give en af en statsautoriseret revisor be-
> kræftet oversigt over indgåede visningsindtægter".

To dage efter forfatteroverenskomstens underskrivelse bekræf-
tede Nordisk Films Studier på indklagedes vegne, at Gabriel
Axel var engageret som instruktør på filmen til en nærmere be-
stemt gage indtil premieren. Herudover blev det aftalt:

> "at han modtager 3% af samtlige indtægter, produ-
> centen måtte få på filmen, indtil filmens produk-
> tionsomkostninger inkl. tilbagebetaling af støtten
> til Det danske filminstitut er indspillet. Herefter
> modtager De 10% af producentens indtægter".

Gabriel Axel modtog den første afregning fra indklagedes revi-
sor med opgørelse over indtægter og udgifter pr. 29. februar
1988. Omkostningerne anført heri var ca. 50% af indtægterne.
Ved de følgende afregninger faldt de anførte omkostninger til
normalt helt forsvindende små beløb i forhold til indtægterne.
Afregningerne var vedlagt forskellige talopgørelser på engelsk
angiveligt indeholdende bl.a. indtægter og udgifter vedrørende
filmen. Senere ophørte afregningerne fra den danske revisor,

KONSKI00130

- 3 -

men Gabriel Axel modtog stadig forskellige regnskabsmæssige
oversigter, hvori der bl.a. var anført "23% distribution fee"
og "10% Extra fee August Ent.".

Den 24. februar 1995 udarbejdede indklagedes revisor en ind-
komstopgørelse over filmens indtægter og udgifter fra 28. au-
gust 1987 - 31. december 1994. I revisorerklæringen anfører
revisor bl.a.:

> "Ved vor gennemgang har vi ikke taget stilling til,
> om afregningerne er opgjort i.h.t. de indgåede af-
> taler med Filminstituttet, konsortiet, distributø-
> rerne og instruktørerne m.v.".

Det fremgik af indkomstopgørelsen, at der var fratrukket om-
kostninger ikke kun til distribution men også til lancering.
Endvidere var karakteren af de enkelte omkostninger opregnet i
2 vedhæftede bilag. Ved en skrivelse af 15. marts 1995 rettede
Sammenslutningen af danske Filminstruktører på vegne klageren
henvendelse til indklagede og opgjorde Gabriel Axels tilgode-
havende royalty til det oprindelige påstandsbeløb 232.631 kr.,
idet man anerkendte, at der uanset de indgåede overenskomster,
var hjemmel til at fratrække 20% i distributionsomkostninger
før beregningen af royalty.

Ved skrivelse af 16. februar 1996 fremsatte Gabriel Axels ad-
vokat "ex tuto ..... anmodning om betaling i henhold til ren-
telovens § 3, stk. 2, med den virkning, at rente skal betales
fra den 19. marts 1996 af samtlige skyldige beløb .....".

Der er til brug for sagen indhentet en række skrivelser og er-
klæringer om kutymer for accepterede fradrag før beregning af
royalty samt eksempler på instruktørkontrakter m.v. Nogle af
disse viser, at royalty først beregnes, efter at både distri-
butions- og lanceringsomkostninger er fratrukket, andre viser,
at der alene fratrækkes distributionsomkostninger, mens atter
andre beregner royalty uden fradrag af omkostninger.

**Forklaringer**:

Der er under sagen afgivet forklaring af Gabriel Axel, indkla-

KONSKI00131

- 4 -

gedes direktør Just Betzer, sekretariatschef i DFI, Ebbe
Preisler, instruktør Søren Kragh Jacobsen, direktør i Tele
Danmark, Bo Christensen, direktør for Nordisk Film, Erik Cro-
ne, og revisor Erik Jørgensen.

Gabriel Axel har bl.a. forklaret, at han startede på filmens
research allerede i 1972, men først i 1985 blev den daværende
direktør for det danske filminstitut interesseret i projektet.
Denne skaffede 9 mio kr. i produktionsstøtte og meddelte, at
han selv kunne vælge den producent, han ønskede. Da han altid
havde haft stor tillid til Just Betzer, valgte han denne, der
gav udtryk for, at Gabriel Axel ville få den bedste kontrakt,
han nogensinde havde fået. På forespørgsel om hvorledes, op-
lyste Just Betzer, at det lå i procenterne - 8% af bruttoind-
tjeningen. Der blev ikke diskuteret fradrag, og han havde in-
gen til at rådgive sig i forbindelse med kontrakternes indgå-
else. Da han modtog afregningerne, bekymrede han sig ikke over
opgørelsesmåden, idet han regnede med engang at få en samlet
opgørelse, og da han i øvrigt havde fuld tillid til Just Bet-
zer. Han havde aldrig tidligere set sådanne regnskaber og bi-
lag, da han hidtil havde fået et fast beløb.

Just Betzer har bl.a. forklaret, at han har produceret film i
såvel Danmark som i udlandet. Han havde før "Babettes Gæste-
bud" haft et godt  samarbejde med Gabriel Axel i et par pro-
duktioner. Lanceringsomkostninger er markedsføringsudgifter,
som er nødvendige for at få filmen solgt. Ved afregningerne
til Gabriel Axel blev der anvendt samme principper for fradrag
som ved andre internationale film. Gabriel Axel havde aldrig
stillet spørgsmål til disse principper. At de ikke fremgik di-
rekte af kontrakterne skyldtes formentlig, at danske film al-
drig tidligere havde kunnet sælge i udlandet.

Ebbe Preisler har bl.a. forklaret, at han har 30 års erfaring
inden for forskellige dele af branchen. Han har tidligere ar-
bejdet for foreningen af danske producenter, før han blev se-
kretariatschef for foreningen af danske instruktører. Da Ga-
briel Axels kontrakter blev lavet, var det helt normalt at be-
regne royalty fra "toppen", altså inden fradrag. Dog var pro-
centen derfor typisk lav, ligesom det var praksis at acceptere

KONSKI00132

- 5 -

20% fradrag for distributionsomkostninger. I dag er instruk-
tørerne indstillet på at acceptere fradrag også for lance-
ringsomkostninger. Selv om vidnet er vant til at læse afreg-
ninger, kommer han til kort ved de engelske opgørelser, som
Gabriel Axel modtog.

**Søren Kragh Jacobsen** har bl.a. forklaret, at han altid er ble-
vet honoreret med fast løn plus 3% i royalty uden fradrag af
omkostninger.

**Bo Christensen** har bl.a. forklaret, at han tidligere har ar-
bejdet 34 år for Nordisk Film, og at det er ham, der har un-
derskrevet Gabriel Axels kontrakter. Der blev ikke skrevet no-
get om fradrag for omkostninger, da der ved producentens ind-
tægter klart forstås, de indtægter, som går i producentens
lomme. Dette måtte Gabriel Axel også vide. De regnskaber og
opgørelser, som Gabriel Axel har modtaget, er lette at gå til
og ret normale.

**Erik Crone** har bl.a. forklaret, at han har stået for filmpro-
duktion op gennem 1970-erne. Det er sjældent, at man ikke om-
taler lanceringsomkostningerne i kontrakter. Alle de omkost-
ningsposter, der er nævnt i bilaget til indkomstopgørelsen af
24. februar 1995 kan fratrækkes, hvis de er projektrelaterede.
De afregninger med bilag, som Gabriel Axel har modtaget, er
helt normale og opbygget på en forståelig og tilgængelig måde.

**Erik Jørgensen** har bl.a. forklaret, at han har været revisor
for indklagede siden 1976. De afregninger, som Gabriel Axel
modtog i starten, var udarbejdet af vidnet i overensstemmelse
med gængs praksis. Han vedlagde altid de udenlandske afreg-
ninger, hvoraf de forskellige fradrag fremgik. Gabriel Axel,
der ofte rykkede vidnet for regnskaber i årene 1988-1990, har
på et tidspunkt udtrykt tilfredshed med de meget specificerede
opgørelser. Det har altid været kutyme at fratrække lance-
ringsomkostninger før beregning af royalty, da disse udgifter
er naturlige for at fremme salget af filmen. Vidnet har set
afregninger fra udlandet, hvoraf udgifterne fremgik, men han
har ikke set bilag herfor. Det er normalt at tage mere end 25%
i distributionsomkostninger, da det kun er støttemæssigt, at

KONSKI00133

- 6 -

der maksimalt accepteres 20%.

**Procedure:**

**Klageren** har gjort gældende, at det klart følger af de indgå-
ede kontrakter, at royalty skal beregnes af producentens brut-
toindtægter. Der er derfor ikke grundlag for at fortolke disse
aftaler, men i givet fald skal de fortolkes imod indklagede
som koncipist af kontrakterne. De 20% til distributionsomkost-
ninger burde være fremgået af kontrakterne, men klageren har
accepteret dette fradrag, da det har været fast praksis.

Klageren har ikke ved at modtage afregningerne med bilag ac-
cepteret den afregningspraksis, som først gik op for ham, da
han modtog indkomstopgørelsen af 24. februar 1995. Der var et
godt og tillidsfuldt samarbejde imellem parterne, og Gabriel
Axel har ikke i det tilsendte materiale haft anledning til at
fatte mistanke om, at der var noget galt. Han er ikke vant til
at se regnskabsmateriale. De store fradrag i starten regnede
han med ville blive udlignet, hvilket også skete ret hurtigt.

Indklagede har ikke løftet sin bevisbyrde for, at der i 1986
eksisterede en kutyme for at fratrække også lanceringsomkost-
ninger. Tværtimod viser de fremlagte udtalelser m.v. og de af-
givne vidneforklaringer meget modsatrettede opfattelser af
praksis.

Under hensyn til at det ikke var muligt for Gabriel Axel at
gennemskue det tilsendte afregningsmateriale, bestrides det,
at noget af kravet skulle være forældet efter 1908-loven.

Såfremt voldgiftsretten finder, at indklagede har ret til at
fratrække lanceringsomkostninger, gøres det gældende, at ud-
gifterne ikke er lanceringsomkostninger og i øvrigt er helt
udokumenterede.

For så vidt angår rentepåstanden fremgår det af dramatiker-
overenskomsten, at royalty betales én gang om året, hvorfor
der skal betales rente af de årligt forfaldne beløb, subsidi-
ært 1 måned efter påkravet i februar 1996.

KONSKI00134

- 7 -

Indklagede har gjort gældende, at klagerens eventuelle efter-
betalingskrav for så vidt angår perioden forud for den 3. juli
1991 er bortfaldet ved forældelse, jf. 1908-loven § 2, da kla-
geren løbende har fået tilsendt regnskaber, ligesom han har
været i kontakt med revisoren, hvorved eventuelle uklarheder
kunne have været afklaret. Indklagedes afregning af royalties
til klageren i perioden siden premieren på "Babettes Gæstebud"
i 1987 har været i overensstemmelse med de indgåede aftaler,
og klageren, der løbende har modtaget afregninger og periode-
regnskaber fra indklagede og dennes revisor, har haft fuld
indsigt i de anvendte principper for beregning af royalties,
ligesom de fremsendte perioderegnskaber og afregninger fra
indklagede har været udformet i overensstemmelse med sædvanlig
praksis i filmbranchen og i øvrigt på en sådan måde, at de an-
vendte beregningsprincipper har været fuldt forståelige - ikke
mindst for klageren, der har en mangeårig erfaring fra film-
branchen. Ved denne afregningspraksis, som har fungeret uan-
fægtet gennem otte år, har parterne etableret en for begge
parter bindende fortolkning af begrebet "producentens ind-
tægter", der i henhold til aftalegrundlaget danner udgangs-
punkt for beregning af royalties til klageren. Hertil kommer,
at parternes hidtidige afregningspraksis var i overensstemmel-
se med herskende kutymer og praksis i filmbranchen - såvel i
Danmark som i international sammenhæng. Baggrunden for denne
praksis er, at først når en film er markedsført, kommer der
indtægter af filmen. Samtlige fratrukne udgifter har været
projektrelaterede også de såkaldte kriseomkostninger til
f.eks. advokat og revisor. For så vidt angår klagerens rente-
påstand har indklagede gjort gældende, at der i givet fald
tidligst kan tilkendes renter fra sagens anlæg, jf. rentelo-
vens § 3, stk. 4, subsidiært fra den 19. marts 1996 i henhold
til klagerens rentepåkrav af 16. februar 1996, jf. rentelovens
§ 3, stk. 2.

**Voldgiftsrettens bemærkninger:**

De fremlagte kontrakter og de afgivne vidneforklaringer viser
ikke, at der eksisterer nogen fast afregningspraksis. Det fin-
des derfor ikke godtgjort, at den hidtidige afregningspraksis

KONSKI00135

- 8 -

mellem parterne er i overensstemmelse med en fast kutyme og praksis i filmbranchen på tidspunktet for aftalernes indgåelse i 1986, idet det bemærkes, at klageren har accepteret, at der før beregning af royalty skal fradrages 20% i distributionsomkostninger.

Forinden kontrakternes indgåelse i 1986 havde Gabriel Axel opnået tilsagn fra det danske filminstitut om produktionsstøtte på 9 mio kr., og han fik ved valget af Just Betzer som producent tilsagn fra denne om, at han ville få den bedste kontrakt nogensinde. Under hensyn hertil, sammenholdt med ordlyden af kontrakterne, findes der ikke grundlag for at fortolke aftalerne således, at der skal ske fradrag for andre udgifter end distributionsomkostninger før beregning af royalty.

De opgørelser, afregninger og oplysningerne heri, som Gabriel Axel har modtaget siden 1988, findes ikke at have en sådan karakter og éntydighed, at Gabriel Axel herved kan anses for at have accepteret en ændring af de indgåede aftaler og forståelsen af "producentens indtægter".

Det må lægges til grund, at Gabriel Axel ved sin besiddelse af de nævnte opgørelser og afregninger og sin jævnlige kontakt med indklagedes revisor havde haft anledning til at anstille undersøgelser, som ville have gjort det muligt at rejse kravet tidligere. Den del af klagerens krav, der angår perioden forud for den 3. juli 1991, er derfor forældet, jf. forældelsesloven af 1908 § 2.

Ingen af aftalerne indeholder bestemmelser om forfaldstidspunkter for den aftalte royalty, hvorfor kravet først forrentes fra den 19. marts 1996 i henhold til klagerens rentepåkrav af 16. februar 1996, jf. rentelovens § 3, stk. 2.

Hver part bærer egne omkostninger og betaler halvdelen af omkostningerne til voldgiftsretten.

                         T h i   b e s t e m m e s:

Indklagede, Panorama Film International v/ direktør Just Bet-

KONSKI00136

- 9 -

zer, betaler inden 14 dage til klageren, filminstruktør Gabri-
el Axel, 95.479 kr. med procesrente af 60.879 kr. fra 19.
marts 1996 og af 34.600 kr. fra den 3. juli 1996.

Hver part bærer egne omkostninger og betaler halvdelen af om-
kostningerne til voldgiftsretten.


Per Håkon Schmidt        M. Levy        Erik Mohr Mersing

(Sign.)

Udskriftens rigtighed bekræftes, den   - 8 OKT. 1997

P.v.v.

Vibeke Løwe
Sektionsleder

KONSKI00137

BBBB

Afsagt den 30. september 1997.


Voldgiftssag                          Filminstruktør Gabriel Axel
                                                 mod
                                      Panorama Film International
                                      v/ direktør Just Betzer.


K E N D E L S E


Voldgiftssagen drejer sig om, hvorvidt indklagede, Panorama
Film International v/ direktør Just Betzer, før beregning af
royalty til klageren, filminstruktør Gabriel Axel, for dennes
indsats som forfatter og instruktør på filmen "Babettes Gæste-
bud" ud over distributionsomkostninger kan fratrække lance-
ringsomkostninger m.v.  Gabriel Axel er enig i, at det uanset
de indgåede kontrakter er fast kutyme at fratrække 20% i di-
stributionsomkostninger, før der beregnes royalty.

Sagen er anlagt ved klageskrift af 3. juli 1996.

Påstande:

Klageren har påstået indklagede tilpligtet at betale 232.631
kr. med procesrente år for år af det da forfaldne beløb fra 1.
februar i det følgende år, subsidiært fra den 19. marts 1996,
mest subsidiært fra sagens anlæg. Endvidere at indklagede til-
pligtes at betale 38.924,02 kr. med procesrente fra sagens an-
læg og til betaling sker.

Indklagede har påstået frifindelse.

Sagens omstændigheder:

Ved kontrakt af 22. juli 1986 overdrog Gabriel Axel alle ret-
tigheder til manuskript og drejebog til filmen "Babettes
Gæstebud" til A/S Nordisk Studier på vegne Panorama Film In-
ternational. Kontrakten var affattet af Nordisk Film. Det

KONSKI00138

- 2 -

fremgår af § 3, at "forfatteren erholder en royalty på 5% af
filmens visningsindtægt, som denne er defineret i overens-
komsten af 20. december 1985 mellem Danske Dramatikeres For-
bund og Foreningen af danske filmproducenter".

Visningsindtægterne er defineret i overenskomstens § 10 om ro-
yalty således:

> "Ved filmens visningsindtægter forstås alle produ-
> centen tilkommende indtægter ved udnyttelsen af de
> producenten i henhold til § 8, stk. 1, tillagte
> rettigheder. Specielt for så vidt angår TV-visning
> bemærkes, at den producenten tilkommende net-
> toindtægt udgør det af TV-selskabet betalte veder-
> lag med fradrag af 30% .....".

Det hedder endvidere:

> "Royalty udbetales til de berettigede mindst een
> gang om året til de terminer, der følger afregning
> fra udlejer eller andre, der foretager indbetaling
> af visningsindtægter til producenten. Producenten
> er forpligtet til på anfordring fra forfatteren er-
> ligt at give en af en statsautoriseret revisor be-
> kræftet oversigt over indgåede visningsindtægter".

To dage efter forfatteroverenskomstens underskrivelse bekræf-
tede Nordisk Films Studier på indklagedes vegne, at Gabriel
Axel var engageret som instruktør på filmen til en nærmere be-
stemt gage indtil premieren. Herudover blev det aftalt:

> "at han modtager 3% af samtlige indtægter, produ-
> centen måtte få på filmen, indtil filmens produk-
> tionsomkostninger inkl. tilbagebetaling af støtten
> til Det danske filminstitut er indspillet. Herefter
> modtager De 10% af producentens indtægter".

Gabriel Axel modtog den første afregning fra indklagedes revi-
sor med opgørelse over indtægter og udgifter pr. 29. februar
1988. Omkostningerne anført heri var ca. 50% af indtægterne.
Ved de følgende afregninger faldt de anførte omkostninger til
normalt helt forsvindende små beløb i forhold til indtægterne.
Afregningerne var vedlagt forskellige talopgørelser på engelsk
angiveligt indeholdende bl.a. indtægter og udgifter vedrørende
filmen. Senere ophørte afregningerne fra den danske revisor,

KONSKI00139

- 3 -

men Gabriel Axel modtog stadig forskellige regnskabsmæssige
oversigter, hvori der bl.a. var anført "23% distribution fee"
og "10% Extra fee August Ent.".

Den 24. februar 1995 udarbejdede indklagedes revisor en ind-
komstopgørelse over filmens indtægter og udgifter fra 28. au-
gust 1987 - 31. december 1994. I revisorerklæringen anfører
revisor bl.a.:

> "Ved vor gennemgang har vi ikke taget stilling til,
> om afregningerne er opgjort i.h.t. de indgåede af-
> taler med Filminstituttet, konsortiet, distributø-
> rerne og instruktørerne m.v.".

Det fremgik af indkomstopgørelsen, at der var fratrukket om-
kostninger ikke kun til distribution men også til lancering.
Endvidere var karakteren af de enkelte omkostninger opregnet i
2 vedhæftede bilag. Ved en skrivelse af 15. marts 1995 rettede
Sammenslutningen af danske Filminstruktører på vegne klageren
henvendelse til indklagede og opgjorde Gabriel Axels tilgode-
havende royalty til det oprindelige påstandsbeløb 232.631 kr.,
idet man anerkendte, at der uanset de indgåede overenskomster,
var hjemmel til at fratrække 20% i distributionsomkostninger
før beregningen af royalty.

Ved skrivelse af 16. februar 1996 fremsatte Gabriel Axels ad-
vokat "ex tuto ..... anmodning om betaling i henhold til ren-
telovens § 3, stk. 2, med den virkning, at rente skal betales
fra den 19. marts 1996 af samtlige skyldige beløb .....".

Der er til brug for sagen indhentet en række skrivelser og er-
klæringer om kutymer for accepterede fradrag før beregning af
royalty samt eksempler på instruktørkontrakter m.v. Nogle af
disse viser, at royalty først beregnes, efter at både distri-
butions- og lanceringsomkostninger er fratrukket, andre viser,
at der alene fratrækkes distributionsomkostninger, mens atter
andre beregner royalty uden fradrag af omkostninger.

**Forklaringer:**

Der er under sagen afgivet forklaring af Gabriel Axel, indkla-

KONSKI00140

- 4 -

gedes direktør Just Betzer, sekretariatschef i DFI, Ebbe
Preisler, instruktør Søren Kragh Jacobsen, direktør i Tele
Danmark, Bo Christensen, direktør for Nordisk Film, Erik Cro-
ne, og revisor Erik Jørgensen.

**Gabriel Axel** har bl.a. forklaret, at han startede på filmens
research allerede i 1972, men først i 1985 blev den daværende
direktør for det danske filminstitut interesseret i projektet.
Denne skaffede 9 mio kr. i produktionsstøtte og meddelte, at
han selv kunne vælge den producent, han ønskede. Da han altid
havde haft stor tillid til Just Betzer, valgte han denne, der
gav udtryk for, at Gabriel Axel ville få den bedste kontrakt,
han nogensinde havde fået. På forespørgsel om hvorledes, op-
lyste Just Betzer, at det lå i procenterne - 8% af bruttoind-
tjeningen. Der blev ikke diskuteret fradrag, og han havde in-
gen til at rådgive sig i forbindelse med kontrakternes indgå-
else. Da han modtog afregningerne, bekymrede han sig ikke over
opgørelsesmåden, idet han regnede med engang at få en samlet
opgørelse, og da han i øvrigt havde fuld tillid til Just Bet-
zer. Han havde aldrig tidligere set sådanne regnskaber og bi-
lag, da han hidtil havde fået et fast beløb.

**Just Betzer** har bl.a. forklaret, at han har produceret film i
såvel Danmark som i udlandet. Han havde før "Babettes Gæste-
bud" haft et godt  samarbejde med Gabriel Axel i et par pro-
duktioner. Lanceringsomkostninger er markedsføringsudgifter,
som er nødvendige for at få filmen solgt. Ved afregningerne
til Gabriel Axel blev der anvendt samme principper for fradrag
som ved andre internationale film. Gabriel Axel havde aldrig
stillet spørgsmål til disse principper. At de ikke fremgik di-
rekte af kontrakterne skyldtes formentlig, at danske film al-
drig tidligere havde kunnet sælge i udlandet.

**Ebbe Preisler** har bl.a. forklaret, at han har 30 års erfaring
inden for forskellige dele af branchen. Han har tidligere ar-
bejdet for foreningen af danske producenter, før han blev se-
kretariatschef for foreningen af danske instruktører. Da Ga-
briel Axels kontrakter blev lavet, var det helt normalt at be-
regne royalty fra "toppen", altså inden fradrag. Dog var pro-
centen derfor typisk lav, ligesom det var praksis at acceptere

KONSKI00141

- 5 -

20% fradrag for distributionsomkostninger. I dag er instruk-
tørerne indstillet på at acceptere fradrag også for lance-
ringsomkostninger. Selv om vidnet er vant til at læse afreg-
ninger, kommer han til kort ved de engelske opgørelser, som
Gabriel Axel modtog.

**Søren Kragh Jacobsen** har bl.a. forklaret, at han altid er ble-
vet honoreret med fast løn plus 3% i royalty uden fradrag af
omkostninger.

**Bo Christensen** har bl.a. forklaret. at han tidligere har ar-
bejdet 34 år for Nordisk Film, og at det er ham, der har un-
derskrevet Gabriel Axels kontrakter. Der blev ikke skrevet no-
get om fradrag for omkostninger, da der ved producentens ind-
tægter klart forstås, de indtægter, som går i producentens
lomme. Dette måtte Gabriel Axel også vide. De regnskaber og
opgørelser, som Gabriel Axel har modtaget, er lette at gå til
og ret normale.

**Erik Crone** har bl.a. forklaret, at han har stået for filmpro-
duktion op gennem 1970-erne. Det er sjældent, at man ikke om-
taler lanceringsomkostningerne i kontrakter. Alle de omkost-
ningsposter, der er nævnt i bilaget til indkomstopgørelsen af
24. februar 1995 kan fratrækkes, hvis de er projektrelaterede.
De afregninger med bilag, som Gabriel Axel har modtaget, er
helt normale og opbygget på en forståelig og tilgængelig måde.

**Erik Jørgensen** har bl.a. forklaret, at han har været revisor
for indklagede siden 1976. De afregninger, som Gabriel Axel
modtog i starten, var udarbejdet af vidnet i overensstemmelse
med gængs praksis. Han vedlagde altid de udenlandske afreg-
ninger, hvoraf de forskellige fradrag fremgik. Gabriel Axel,
der ofte rykkede vidnet for regnskaber i årene 1988-1990, har
på et tidspunkt udtrykt tilfredshed med de meget specificerede
opgørelser. Det har altid været kutyme at fratrække lance-
ringsomkostninger før beregning af royalty, da disse udgifter
er naturlige for at fremme salget af filmen. Vidnet har set
afregninger fra udlandet, hvoraf udgifterne fremgik, men han
har ikke set bilag herfor. Det er normalt at tage mere end 25%
i distributionsomkostninger, da det kun er støttemæssigt, at

KONSKI00142

- 6 -

der maksimalt accepteres 20%.

**Procedure**:

**Klageren** har gjort gældende, at det klart følger af de indgå-
ede kontrakter, at royalty skal beregnes af producentens brut-
toindtægter. Der er derfor ikke grundlag for at fortolke disse
aftaler, men i givet fald skal de fortolkes imod indklagede
som koncipist af kontrakterne. De 20% til distributionsomkost-
ninger burde være fremgået af kontrakterne, men klageren har
accepteret dette fradrag, da det har været fast praksis.

Klageren har ikke ved at modtage afregningerne med bilag ac-
cepteret den afregningspraksis, som først gik op for ham, da
han modtog indkomstopgørelsen af 24. februar 1995. Der var et
godt og tillidsfuldt samarbejde imellem parterne, og Gabriel
Axel har ikke i det tilsendte materiale haft anledning til at
fatte mistanke om, at der var noget galt. Han er ikke vant til
at se regnskabsmateriale. De store fradrag i starten regnede
han med ville blive udlignet, hvilket også skete ret hurtigt.

Indklagede har ikke løftet sin bevisbyrde for, at der i 1986
eksisterede en kutyme for at fratrække også lanceringsomkost-
ninger. Tværtimod viser de fremlagte udtalelser m.v. og de af-
givne vidneforklaringer meget modsatrettede opfattelser af
praksis.

Under hensyn til at det ikke var muligt for Gabriel Axel at
gennemskue det tilsendte afregningsmateriale, bestrides det,
at noget af kravet skulle være forældet efter 1908-loven.

Såfremt voldgiftsretten finder, at indklagede har ret til at
fratrække lanceringsomkostninger, gøres det gældende, at ud-
gifterne ikke er lanceringsomkostninger og i øvrigt er helt
udokumenterede.

For så vidt angår rentepåstanden fremgår det af dramatiker-
overenskomsten, at royalty betales én gang om året, hvorfor
der skal betales rente af de årligt forfaldne beløb, subsidi-
ært 1 måned efter påkravet i februar 1996.

**Indklagede** har gjort gældende, at klagerens eventuelle efter-
betalingskrav for så vidt angår perioden forud for den 3. juli
1991 er bortfaldet ved forældelse, jf. 1908-loven § 2, da kla-
geren løbende har fået tilsendt regnskaber, ligesom han har
været i kontakt med revisoren, hvorved eventuelle uklarheder
kunne have været afklaret. Indklagedes afregning af royalties
til klageren i perioden siden premieren på "Babettes Gæstebud"
i 1987 har været i overensstemmelse med de indgåede aftaler,
og klageren, der løbende har modtaget afregninger og periode-
regnskaber fra indklagede og dennes revisor, har haft fuld
indsigt i de anvendte principper for beregning af royalties,
ligesom de fremsendte perioderegnskaber og afregninger fra
indklagede har været udformet i overensstemmelse med sædvanlig
praksis i filmbranchen og i øvrigt på en sådan måde, at de an-
vendte beregningsprincipper har været fuldt forståelige - ikke
mindst for klageren, der har en mangeårig erfaring fra film-
branchen. Ved denne afregningspraksis, som har fungeret uan-
fægtet gennem otte år, har parterne etableret en for begge
parter bindende fortolkning af begrebet "producentens ind-
tægter", der i henhold til aftalegrundlaget danner udgangs-
punkt for beregning af royalties til klageren. Hertil kommer,
at parternes hidtidige afregningspraksis var i overensstemmel-
se med herskende kutymer og praksis i filmbranchen - såvel i
Danmark som i international sammenhæng. Baggrunden for denne
praksis er, at først når en film er markedsført, kommer der
indtægter af filmen. Samtlige fratrukne udgifter har været
projektrelaterede også de såkaldte kriseomkostninger til
f.eks. advokat og revisor. For så vidt angår klagerens rente-
påstand har indklagede gjort gældende, at der i givet fald
tidligst kan tilkendes renter fra sagens anlæg, jf. rentelo-
vens § 3, stk. 4, subsidiært fra den 19. marts 1996 i henhold
til klagerens rentepåkrav af 16. februar 1996, jf. rentelovens
§ 3, stk. 2.

**Voldgiftsrettens bemærkninger:**

De fremlagte kontrakter og de afgivne vidneforklaringer viser
ikke, at der eksisterer nogen fast afregningspraksis. Det fin-
des derfor ikke godtgjort, at den hidtidige afregningspraksis

KONSKI00144

- 8 -

mellem parterne er i overensstemmelse med en fast kutyme og
praksis i filmbranchen på tidspunktet for aftalernes indgåelse
i 1986, idet det bemærkes, at klageren har accepteret, at der
før beregning af royalty skal fradrages 20% i distributionsom-
kostninger.

Forinden kontrakternes indgåelse i 1986 havde Gabriel Axel op-
nået tilsagn fra det danske filminstitut om produktionsstøtte
på 9 mio kr., og han fik ved valget af Just Betzer som produ-
cent tilsagn fra denne om, at han ville få den bedste kontrakt
nogensinde. Under hensyn hertil, sammenholdt med ordlyden af
kontrakterne, findes der ikke grundlag for at fortolke af-
talerne således, at der skal ske fradrag for andre udgifter
end distributionsomkostninger før beregning af royalty.

De opgørelser, afregninger og oplysningerne heri, som Gabriel
Axel har modtaget siden 1988, findes ikke at have en sådan ka-
rakter og éntydighed, at Gabriel Axel herved kan anses for at
have accepteret en ændring af de indgåede aftaler og forståel-
sen af "producentens indtægter".

Det må lægges til grund, at Gabriel Axel ved sin besiddelse af
de nævnte opgørelser og afregninger og sin jævnlige kontakt
med indklagedes revisor havde haft anledning til at anstille
undersøgelser, som ville have gjort det muligt at rejse kravet
tidligere. Den del af klagerens krav, der angår perioden forud
for den 3. juli 1991, er derfor forældet, jf. forældelsesloven
af 1908 § 2.

Ingen af aftalerne indeholder bestemmelser om forfaldstids-
punkter for den aftalte royalty, hvorfor kravet først forren-
tes fra den 19. marts 1996 i henhold til klagerens rentepåkrav
af 16. februar 1996, jf. rentelovens § 3, stk. 2.

Hver part bærer egne omkostninger og betaler halvdelen af om-
kostningerne til voldgiftsretten.

Thi   bestemmes:

Indklagede, Panorama Film International v/ direktør Just Bet-

KONSKI00145

- 9 -

zer, betaler inden 14 dage til klageren, filminstruktør Gabri-
el Axel, 95.479 kr. med procesrente af 60.879 kr. fra 19.
marts 1996 og af 34.600 kr. fra den 3. juli 1996.

Hver part bærer egne omkostninger og betaler halvdelen af om-
kostningerne til voldgiftsretten.


Per Håkon Schmidt        M. Levy        Erik Mohr Mersing

(Sign.)

Udskriftens rigtighed bekræftes, den        - 8 OKT. 1997
P.v.v.

Vibeke Løwe
Sektionsleder

KONSKI00146